# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB KEITH THOMAS, | ) 1:09cv01716 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S<br>) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Jacob Keith Thomas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on January 18, 2007, alleging disability since January 17, 2007, due to mental problems. AR 104-112, 121-127. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

("ALJ"). AR 56-59, 64-68, 70. ALJ Bert C. Hoffman, Jr., held a hearing on March 29, 2009, and denied benefits on April 17, 2009. AR 5-15, 16-43. The Appeals Council denied review on August 7, 2009. AR 1-4.

Hearing Testimony

ALJ Hoffman held a hearing on March 29, 2009, in Fresno, California. Plaintiff appeared with his attorney, Robert D. Christensen. AR 16.

Plaintiff testified that he was 27 years old at the time of the hearing. He graduated high school and was currently taking two classes, soil science and multicultural counseling, at Porterville College. He has about 90 units and a 1.9 GPA, though he's been working hard over the last two years to improve his grades. In the past two years only, his GPA is about a 3.0 and he's completed 20 units. The soil science class is two days per week, as is the multicultural class. Each class is about two hours and the lab for soil science is about three hours. AR 20-21. He is therefore in class four days a week, for a couple of hours a day. AR 27. School is a "driving force" in his life and his life "kind of centers around it." He explained that he failed so many times in the past and is very proud of the fact that he is now passing classes. AR 28.

Plaintiff was not taking more classes because he would rather take fewer classes and pass. He did not think he could handle more classes because of the problems he has with organization and memory. He would get overwhelmed and fail. Plaintiff explained that when he gets up in the morning, he has a list taped to the shower that says, "shampoo hair, wash entire body with soap, get out and dry myself." If he doesn't have this written down, then he "wouldn't do them well enough." AR 27. When he gets out of the shower, he has a list that says, "put gel in hair, shave, brush teeth, gargle with mouthwash, put on deodorant, put on cologne." Without the checklist, Plaintiff would get distracted and forget what he needed to do. He would be late to school and wouldn't be clean. AR 28

Plaintiff worked last semester at the swap meet in Porterville. He worked on Saturdays, from 6:00 a.m. to 2:00 p.m., watching the parking lot for security purposes. He was fired from the position after he was late twice. AR 21-22. Prior to that position, Plaintiff had been looking for work for about one and a half years but was unable to find a job. AR 22. Plaintiff was

previously a dishwasher at Denny's for about five days. AR 22-23. He also worked as a tree trimmer over the summer in 1999 and as a resort driver for a few months in 2001. AR 24. Currently, Plaintiff has been trying "really hard" to find work. AR 30.

Plaintiff testified that he last used drugs when he started drug court in February or March 2003. He was actually clean for three years before that, but relapsed, got caught and ended up in drug court. AR 23-25. Plaintiff was hospitalized in 2002 after he started hearing voices and developed abnormal patterns of thought. AR 25. His symptoms have subsided recently and he's dealt with them long enough to know that they aren't permanent. He has to monitor himself very closely to avoid flare-ups. Plaintiff was taking Zyprexa, an antipsychotic, and Xanax. Zyprexa decreases the intensity of the voices and headaches. AR 26. He has been doing pretty well lately and testified that when he sees his doctors and takes his medicine, he has considerably less symptoms. AR 26. Plaintiff is worried, however, that he may not have the money to keep seeing his doctors. AR 26-27.

In addition to classes, Plaintiff testified that his homework varies depending on his classes. Plaintiff has ADD and has to take his medication so that he can read and take in the information. Sometimes he has to study for three hours, but he cannot study at all if he doesn't have his medication. He uses a laptop to do his school work. AR 29.

Plaintiff lives in a room in his mother's house but does not have money to support himself. Last semester, he lost electricity and had to do his homework by candlelight. AR 31.

Plaintiff has a four year old daughter who splits her time with Plaintiff, his mother and her mother, Celeste. He still sees Celeste a few times a week and they often clean the house and take care of their daughter. AR 31-32. Plaintiff takes his daughter to the park, plays with her on the computer and helps her write her name. He feeds her and sometimes picks her up from preschool. When she was a baby, he and Celeste lived together and took care of her together. AR 32.

Plaintiff cleans his room on a regular basis and sometimes mows the lawn. AR 34.

Plaintiff currently sees Dr. James, a family physician, who gives him the medication for his schizophrenia. He doesn't talk to Plaintiff and try to figure out his mental problems, like a psychologist would. AR 35.

Plaintiff explained that he has trouble concentrating on things because his mind wanders a lot. He thought that he could focus for a few minutes at a time. When he reads for school, he is not focused the whole time and he has learned to read "in a dreamlike state." He medicates himself before class so that he can focus for the two hour period. AR 36. He can't be on the medication all the time, however, because of side effects. AR 36-37.

Plaintiff still has days when he can't function well all the time, i.e., 5 days a week. He has learned to deal with this by staying in bed. AR 37-38. When he has his daughter, however, he always makes sure that she has food, and is clean, happy and learning. When she goes to bed, he is able to rest again. AR 39. He explained that he goes to bed at 8:00 p.m. and sleeps until morning. If he still isn't feeling well, he'll go back to bed and sleep all day. AR 38. If he has to take care of his daughter, he'll get up by 4:00 p.m. to pick her up and take care of her the rest of the day. AR 39.

Plaintiff explained that he could not work because when his symptoms start to manifest themselves, he tries to keep working and do everything right, but he ends up forgetting something or getting to work late. AR 40.

Medical Record

On July 31, 2003, Plaintiff was admitted to Aurora Vista del Mar Behavioral Health Care on a voluntary basis because he was psychotic and had a violent episode. AR 259. At the beginning of his stay, he was very psychotic, having ideas of reference from the television and auditory hallucinations with other delusional beliefs. His affect was inappropriately giddy and he became somewhat assaultive towards other patients when he argued that he was hospitalized because of a conspiracy. As his medication doses were adjusted, his psychotic belief subsided and his mood stabilized. He was discharged on August 12, 2003, with diagnoses of schizophrenic disorder and methamphetamine abuse in early full remission. He was taking Depakote and Risperdal. AR 259-261.

1        On August 18, 2003, Plaintiff began treating with Dr. James.  Treatment notes indicate
2   that Plaintiff was in a psychiatric clinic for one week after he "tore up his room" and "felt anger."
3   Dr. James diagnosed Plaintiff with depression and instructed him to follow up with his
4   psychiatrist.  AR 199.
5        Plaintiff treated with psychologist Dr. Geshuri intermittently beginning in September
6   2003.  He stopped treatment in late 2004 and resumed therapy in November 2005.  Plaintiff was
7   being treated for a mood disorder, depression and anxiety.  AR 160-169.
8        On January 4, 2006, Dr. Geshuri noted that Plaintiff was depressed and hearing voices.
9   He had stopped going to drug court.  Notes from January 10, 2006, indicate that Plaintiff had a
10  nervous breakdown two months prior.  AR 168.
11       On January 16, 2006, Plaintiff needed to talk to Dr. James about anxiety.  He was
12  prescribed Xanax.  AR 176.
13       On July 20, 2006, Dr. Geshuri noted that Strattera was helping.   AR 162.
14       On September 20, 2006, Dr. James diagnosed Plaintiff with ADD without hyperactivity.
15  AR 172.
16       On March 5, 2007, State Agency consultant Megan Farley noted that Plaintiff had failed
17  to return the Activity of Daily Living Questionnaire and denied the claim for insufficient
18  evidence.  AR 206-207.
19       Plaintiff returned to Dr. James on May 22, 2007.  He reported that his anxiety and
20  depression were better.  AR 210.
21       Treatment notes from June 14, 2007, state, "No problem today."  AR 211.
22       Dr. James' treatment notes from July 31, 2007, indicate that Plaintiff was doing well.  AR
23  212.
24       In July 2007, Jack Gregory, M.D., noted that Plaintiff was doing well.  AR 240.
25       On September 18, 2007, State Agency physician Allen Middleton, M.D., indicated that
26  there was insufficient evidence to determine whether Plaintiff had a medical impairment.  AR
27  218-219.
28

In October 2007, Dr. Gregory noted that Plaintiff was doing well on his medications and had good results with Adderal. AR 237-238.

On March 2008, Dr. Gregory again indicated that Plaintiff was doing well. He was taking Zyprexa, an antipsychotic drug, and had been diagnosed with schizophrenia. AR 232.

Plaintiff returned to Dr. Gregory in May 2008. Plaintiff was doing "very well now." AR 248. Plaintiff continued to treat with Dr. Gregory through January 2009 and was prescribed Xanax and Vicodin. AR 249-256.

On March 10, 2009, Dr. James completed a Mental Impairments Questionnaire. He indicated that he had treated Plaintiff for depression monthly for the past four years. He noted that Plaintiff's symptoms included poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, delusions or hallucinations, substance dependencies, difficulty thinking or concentrating, social withdrawal or isolation and illogical thinking. He further indicated that Plaintiff responded to medication and that his prognosis was fair. Dr. James opined that Plaintiff would be capable of low stress jobs and noted that he is easily frustrated. Dr. James believed that Plaintiff would be absent from work more than three times per month and that he would have difficulty working at a regular job on a sustained basis because of difficulty coping. He opined that Plaintiff had moderate restrictions of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. He has had one or two episodes of decompensation, each of extended duration. Plaintiff has had these restrictions since February 2005. AR 269-272.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of methamphetamine abuse in sustained remission and schizophrenia, controlled with medication. AR 10. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but would be limited to low stress jobs. AR 11. Based on Medical Vocational Guideline 204.00, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. AR 14.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (methamphetamine abuse in sustained remission and schizophrenia, controlled with medication) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs.  AR 10-14.

Here, Plaintiff argues that the ALJ erred (1) in not using a Vocational Exert; (2) in not adopting the opinion of Dr. James; and (3) in finding Plaintiff not credible.

**DISCUSSION**

A.   Use of Vocational Expert

   1.   Limitation to Low Stress Job

Plaintiff first argues that the ALJ's finding that he was limited to a low stress job required the use of a Vocational Expert ("VE").  Plaintiff's argument is premised on his belief that the use of a VE is "mandatory if non-exertional impairments restrict work capacities."  Opening Brief, at 8.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work.  Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998).  The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations.  Id. (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)).  If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform.  Desrosiers v. Secretary of Housing and Health Services, 846 F.2d 573, 577 (9th Cir. 1988).  The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ.  Id.

Here, the ALJ found that Plaintiff could perform "a full range of work at all exertional levels," limited only by the requirement that he have a "low stress job." AR 11. Contrary to Plaintiff's contention that the existence of a non-exertional limitation makes VE testimony mandatory, a VE is only required where the non-exertional limitation "significantly limits" the range of work available. In other words, a VE would only be required here if the ALJ determined that a limitation to a low stress job significantly limits the range of work Plaintiff could perform.

The ALJ correctly noted that Plaintiff's ability to perform work at all exertional levels had been compromised by a limitation to low stress jobs. He determined, however, that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." AR 14. The ALJ therefore relied on Rule 204.00 to find Plaintiff not disabled. AR 14.

It was within the ALJ's province to make this determination. *Desrosiers*, 846 F.2d at 577. Such a conclusion is certainly logical given that Plaintiff could perform the full range of work at every exertional level.

2.   Moderate Limitations in Concentration

In a similar argument, Plaintiff contends that the ALJ should have used a VE to determine the impact of moderate difficulties in concentration, persistence and pace on the occupational base.

Plaintiff is incorrect, however, in arguing that these moderate difficulties were part of the RFC finding. The ALJ's determination that Plaintiff had moderate difficulties in concentration, persistence and pace was made at the step two and three severity analysis. Unlike the analysis at steps two and three, where the ALJ examines the degree of limitation, RFC is the most a claimant can do, "*despite* [his] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

Therefore, although the ALJ found moderate limitations in concentration, persistence and pace, he found that Plaintiff retained the mental capacity to perform low stress jobs. Contrary to Plaintiff's assumption, a moderate limitation at steps two and three does not necessarily translate into a disabling RFC. The Ninth Circuit has explained that the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has

satisfied the requirements at step five." Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007) (a step-two finding that a non-exertional impairment is severe does not require that the ALJ seek the assistance of a vocational expert at step five).

The ALJ's reliance on the Grids was therefore supported by substantial evidence and free of legal error.

B.   Dr. James' Opinion

Plaintiff next argues that the ALJ erred in failing to adopt all of Dr. James' limitations set forth in his March 10, 2009, Mental Impairment Questionnaire. Specifically, Plaintiff points to Dr. James' belief that Plaintiff would be absent from work more than three times per month and would have difficulty working at a regular job on a sustained basis because of difficulty coping.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983). A treating physician's opinion may only be given controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); SSR 96-2p.

The medical record in this case contained only two RFC opinions. The first was a finding by a State Agency physician that Plaintiff's mental impairment was not severe. As the ALJ noted, however, the physician did not have all relevant evidence and therefore his opinion was not entitled to any weight. AR 13, 218.

The only other opinion was the Mental Impairment Questionnaire completed by Dr. James on March 10, 2009.  The ALJ adopted Dr. James' belief that Plaintiff could perform low stress jobs and incorporated this into the RFC.  AR 19.  The ALJ did not, however, adopt other portions of the opinion.  The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions.  <u>Magallanes</u>, 881 F.2d at 753-754.

The ALJ first questioned Dr. James' overall opinion because he stated that he had treated Plaintiff for four years, yet the records indicate that there was over a year-long break in treatment.  AR 13.  An ALJ can consider inconsistencies in analyzing a physician's findings.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432-1433 (9th Cir. 1995).

Similarly, the ALJ explained that although Dr. James indicates that Plaintiff suffered from appetite disturbance, sleep disturbance, delusions or hallucinations, substance dependence, social withdrawal or isolation and illogical thinking, the treatment records after April 2007 do not support such symptoms.  AR 13.  Indeed, while evidence of such symptoms existed prior to April 2007, the medical record shows that Plaintiff began improving substantially after that date.  In fact, for almost two years prior to Dr. James' March 2009 opinion, the medical records overwhelmingly indicate that Plaintiff had improved and was doing better.  On May 22, 2007, Plaintiff reported to Dr. James that his anxiety and depression were better.  AR 210.  Treatment notes from June 14, 2007, state, "No problem today."  AR 211.  Dr. James' treatment notes from July 31, 2007, indicate that Plaintiff was doing well.  AR 212.  In July 2007, Dr. Gregory noted that Plaintiff was doing well.  AR 240.  In October 2007, Dr. Gregory noted that Plaintiff was doing well on his medications and had good results with Adderal.  AR 237-238.  In March 2008, Dr. Gregory indicated that Plaintiff was doing well.  AR 232.  In May 2008, Dr. Gregory stated that Plaintiff was doing "very well now."  AR 248.  There is no indication that Plaintiff's condition changed after March 2008.

The ALJ further noted that Plaintiff's symptoms were adequately treated with medication. AR 13.  Dr. James himself noted on the Questionnaire that Plaintiff responded to medication.  AR 270.  The above medical evidence further supports the ALJ's conclusion that Plaintiff's symptoms were adequately treated with medication.  Additionally, Plaintiff testified that Zyprexa

decreased the intensity of the voices and his headaches, that he had been doing "pretty well" and that the medication helped him "a lot." AR 26-27.

Finally, the ALJ specifically rejected Dr. James' opinion that Plaintiff would miss work more than three times per month and would have difficulty working at a regular job on a sustained basis because of difficulty coping. He explained that Plaintiff has "demonstrated the efficacy of current treatment by consistently attending classes and labs 4 days per week." AR 13. Plaintiff testified that he attended eight hours of class per week, as well as a three hour lab. He also testified that he is able to study outside of class as long as he takes his medication, sometimes up to three hours. He explained that his grades have improved over the past two years and that he was passing all his classes. AR 26-27.

Plaintiff argues that two hours per day of college classes does not translate into the ability to perform work eight hours per day, five days per week. In this context, however, the ALJ was not using Plaintiff's college attendance to determine that he could sustain work activity. Instead, the ALJ contrasted Plaintiff's attendance and related studying with Dr. James' opinion that Plaintiff would be absent three times per month and could not work on a sustained basis.

Plaintiff also contends that Dr. James' conclusion is supported by the medical evidence. In support, Plaintiff cites medical records from 2003 through 2006, prior to his improvement. He also cites Plaintiff's treatment with Dr. James and Dr. Gregory, but does not acknowledge his improvement since 2007 while under their care.

The ALJ noted numerous reasons why Dr. James' opinion regarding Plaintiff's ability to sustain work activity was inconsistent with other evidence in the record. 20 C.F.R. § 416.927(d)(2); SSR 96-2p. His analysis was therefore supported by substantial evidence and free of legal error.

C.  Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in finding that he was not credible. He contends that the "ALJ seems to only" rely on Plaintiff's college attendance to discredit his testimony. Opening Brief, at 14.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Contrary to Plaintiff's interpretation of the decision, the ALJ set forth more than one reason for questioning his credibility. He first noted that Plaintiff testified that his symptoms were considerably less when he takes his medication. AR 12. During the hearing, Plaintiff explained that his symptoms have subsided recently and that he's been "pretty well." AR 26. He further explained that when he sees his doctors and takes his medicine, he has considerably less symptoms. AR 26. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

The ALJ also questioned Plaintiff's credibility based on his daily activities. For example, treatment notes from April 2007 indicate that Plaintiff was doing all his daily chores. AR 13. Plaintiff was also consistently attending classes and labs 4 days per week and was passing his classes. AR 12-13. Indeed, Plaintiff testified that for the last two years, he has completed 20 unites and maintained a 3.0 GPA. AR 12, 27. *See eg., Matthews v. Shalala*, 10 F.3d 678, 679-

680 (9th Cir. 1993) (claimant attending classes three days per week weighed against allegations of disability).

Finally, the ALJ contrasted the medical evidence with Plaintiff's subjective description of his limitations. As noted in detail throughout this order, the medical evidence since April 2007 showed that Plaintiff had made substantial improvements and was doing well. So long as it is not the sole reason to discredit a claimant, the ALJ may examine the objective evidence. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996).

The Court therefore concludes that the ALJ's analysis was sufficient to show that he did not arbitrarily reject Plaintiff's testimony. The credibility analysis is supported by substantial evidence and was free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Jacob Keith Thomas.

IT IS SO ORDERED.

Dated:   **August 17, 2010**                              **/s/ Dennis L. Beck**
                                                          UNITED STATES MAGISTRATE JUDGE